**SO ORDERED.**

**SIGNED this 14 day of March, 2012.**

_____

**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

**IN RE:**

| | |
|---|---|
| **CONSTRUCTION SUPERVISION SERVICES, INC.,** | **CHAPTER 11** <br> **CASE NO. 12-00569-8-RDD** |
| **DEBTOR** | |

**ORDER**

Pending before the Court is the Emergency Motion for Order to Determine Extent of Stay and, in the Alternative, for Order Granting Relief from Stay to Perfect Liens under Chapter 44A of the North Carolina General Statutes (the "Emergency Motion") and the accompanying memorandum of law, filed by Hanson Aggregates Southeast LLC, Couch Oil Company of Durham, Inc., and R.W. Moore Equipment Co. on February 10, 2012; the Response in Support of Emergency Motion filed by HD Supply Waterworks, Ltd., d/b/a HD Supply Waterworks, Limited Partnership on February 16, 2012 (collectively hereinafter referred to as the "Lien Claimants"); and the Response in Opposition to Emergency Motion filed by Construction Supervision Services, Inc. (the "Debtor") on February 16, 2012. The Court conducted a hearing on February 17, 2012 to consider these matters. At the conclusion of the hearing, Branch Banking and Trust Company ("BB&T") was given the opportunity

to file a memorandum of law within ten days of the hearing date. BB&T filed a Memorandum of Law in Opposition to Motion for Relief from Stay on February 27, 2012.

The Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on January 24, 2012 and is operating as a debtor in possession. The Debtor is a full-service construction company. The Lien Claimants are unpaid material suppliers that supplied materials to the Debtor. On some of the projects, the Debtor was the contractor and the Lien Claimants were the Debtor's "first tier" suppliers. On other projects, the Debtor was the "first tier" subcontractor and the Lien Claimants were the Debtor's "second tier" suppliers. As was the norm, the Debtor would place orders for materials and equipment with the Lien Claimants, and the Lien Claimants would supply the requested materials and equipment to the Debtor on an open account, with invoices generated for those materials as they were delivered to the various project sites.[1]

The Lien Claimants request the Court to rule that the postpetition service of a North Carolina statutory Claim of Lien Upon Funds is not a violation of the automatic stay and is an exception to the automatic stay as provided in 11 U.S.C. § 362(b)(3). The Debtor and BB&T argue that the Eastern

---

[1] Hanson Aggregates Southeast LLC asserts that it is owed at least the principal amount of $233,751.11 for materials furnished to the Debtor on nineteen (19) different construction projects. Couch Oil Company of Durham, Inc. asserts that it is owed at least the principal amount of $132,113.83 for materials furnished to the Debtor on nine (9) different construction projects. R.W. Moore Equipment Co. asserts that it is owed at least the principal amount of $87,159.37 for rental equipment furnished to the Debtor on six (6) different construction projects. As of the date of the bankruptcy filing, the Lien Claimants had not served any notices of claims of lien upon funds. HD Supply Waterworks, Ltd. is a first and second tier subcontractor/supplier on various projects for which Debtor serves either as a prime contractor or first tier subcontractor. HD Supply Waterworks, Ltd. asserts it is owed $106,777.86 plus interest as of December 22, 2011 in the amount of $8,088.08 and additional interest thereafter at the contract rate of 1.5% per month for work done and materials supplied on five (5) different construction projects. Total owed to the Lien Claimants is $567,890.25.

District of North Carolina has denied similar requests for relief in previous cases and that the § 362(b)(3) exception to stay is not available to the Lien Claimants.

This issue of whether the postpetition service of a North Carolina statutory Claim of Lien upon Funds is permitted by the exception to the automatic stay as set out in 11 U.S.C. § 362(b)(3) was addressed in *In re Harrelson Utilities*, *Inc.*, 2009 WL 2382570 (Bankr. E.D.N.C. July 30, 2009) and in *In re Mammoth Grading, Inc.*, No. 09-01286-8-ATS (Bankr. E.D.N.C. July 31, 2009). In *In re Harrelson Utilities, Inc.*, the debtor was a utilities contractor that acted as a contractor or first tier subcontractor on multiple construction projects. *Id.* at 1. Multiple subcontractors served notices claiming statutory labor and materialmen's liens on funds, postpetition and, by subrogation to the debtor's lien rights, served claims of lien on real property. *Id.* The debtor argued that the subcontractors violated the automatic stay by "filing postpetition notices pursuant to North Carolina General Statutes § 44A-19, claiming statutory labor and materialmen's liens under § 44A-18 against funds due to [the debtor], and by filing notices pursuant to § 44A-12 claiming, by subrogation under § 44A-23(a) and (b), [debtor's] labor and materialman's liens against real property on which [the debtor] and the subcontractors did work." *Id.* The Court discussed North Carolina lien law as well as 11 U.S.C. § 362(b)(3), which excepts from the automatic stay "'any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under Section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A) of' title 11." *Id.* (quoting 11 U.S.C. § 362(b)(3)). The Court noted that under North Carolina law, subcontractors with properly perfected liens on funds are given priority. *Id.* at 4. However, the Court found that the subcontractors' "interest" in the funds did not arise prior to the time they give notice of their liens

3

pursuant to 11 U.S.C. §§ 44A-18(6) and 44A-19(d). *Id.* The Court held that a subcontractor's lien rights did not constitute an "interest in property." *Id.* As a result, the Court ruled that postpetition filing of claims of liens on funds did not fall within the exception of 11 U.S.C. § 363(b)(3) and was a violation of the automatic stay. *Id.* at 6. The Court also held that subcontractors could not file subrogation liens on real property, because serving the notice of claim of lien on funds is a condition precedent to filing the subrogation lien. *Id.*

On July 31, 2009, the Bankruptcy Court entered an order in *In re Mammoth Grading, Inc.*, No. 09-01286-8-ATS (Bankr. E.D.N.C. July 31, 2009). The Court stated "[a]fter a thorough analysis of the legal arguments set forth by the parties in both this case and in Harrelson Utilities, the court in an order entered in the Harrelson case on July 30, 2009, held that serving a notice of claim of lien on funds due to the debtor postpetition violates the automatic stay under § 362(a)(4) of the Bankruptcy Code." *Id.* at 4. Accordingly, the Court held that "liens filed by subcontractors against the real property must be supported by valid liens on funds due to the contractor, and if the liens on the funds are invalid, so are the liens against the real property." *Id.*

Ferguson Enterprises, Inc. of Virginia, and other unpaid subcontractors appealed the Bankruptcy Court's orders in both the Harrelson Utilities and Mammoth Grading cases to the United States District Court for the Eastern District of North Carolina (the "U.S. District Court").

On November 22, 2010, the Bankruptcy Court entered the Order Approving Joint Motion to Approve Settlement and Compromise in the Harrelson Utilities bankruptcy case. *In re Harrelson Utilities, Inc.*, 2010 WL 4824419 (Bankr. E.D.N.C. November 22, 2010). As a result, the appeal in *Ferguson Enterprises, Inc. of Virginia v. Harrelson Utilities, Inc.* No. 5:09-cv-00426-FL was dismissed. *Id.* at 1.

However, the appeal was still pending in the *Ferguson Enterprises, Inc. of Virginia v. Mammoth Grading, Inc.* No. 5:10-cv-0316-H. On February 23, 2012, the Honorable Malcolm J. Howard, Senior United States District Judge for the Eastern District of North Carolina, issued an order determining the appeal was moot. *Ferguson Enterprises, Inc. of Virginia v. Mammoth Grading, Inc.*, No. 5:10-cv-316-H at 4 (E.D.N.C. Feb. 23, 2012). The U.S. District Court dismissed the appeal, vacated the Bankruptcy Court's decision in *In re Mammoth Grading, Inc.*, No. 09-01286-8-ATS (Bankr. E.D.N.C. Aug. 24, 2009) and remanded the matter to the Bankruptcy Court. *Id.* at 5-6.

The issue now before the Court is the very issue addressed in the Harrelson Utilities and Mammoth Grading cases. While the U.S. District Court was "constrained to dismiss Ferguson's appeal" based on mootness, the Court did provide guidance as to whether postpetition filing and service of claims of liens and notices of claims of liens filed by subcontractors are excepted from the automatic stay imposed by 11 U.S.C. § 362. *Id.* at 4. The U.S. District Court noted that "North Carolina subcontractors supplying labor or materials for construction projects have long operated upon the assumption that Chapter 44A of the North Carolina General Statutes provides them with inchoate lien rights that arise upon the furnishing of work or materials." *Id.* at 3 (comparing *Equitable Life Assurance Soc'y of U.S. v. Basnight*, 234 N.C. 347, 352 (1951) which provides "[a] contractor's lien on real property is inchoate until perfected by compliance with legal requirements, and is lost if the steps required for its perfection are not taken in the manner and within the time prescribed by law."). As a result, the District Court expressed its concerns with the Bankruptcy Court's rulings in Mammoth Grading and Harrelson Utilities and noted that the decisions had "turned the construction industry's standard operating procedure on its head." *Id.* at 4. The U.S. District Court went on to note:

5

>[t]his court questions whether the bankruptcy court's rulings below are in accord with North Carolina statutory law and the constitutional protections afforded laborers and materialmen by Article X Section 3 of the North Carolina Constitution. Specifically, the court is concerned that the bankruptcy court may have erred in determining that a lien under Chapter 44A, Article 2, Part 2, of the North Carolina General Statutes does not arise until the filing of a notice of claim of lien by the subcontractor.

*Id.*

The District Court's comments, while dicta, are most instructive. Accordingly, this Court is compelled to reconsider this issue.

The sole issue before the Court is whether the postpetition service of claim of lien upon funds is permitted by the exception to the automatic stay as set out in 11 U.S.C. § 362(b)(3). The Court holds that the postpetition service of a claim of lien upon funds does fit within the exception and does not require a motion for relief from stay.

Regarding this important issue, the First Circuit aptly has noted that "this case perches at a crossroads formed by the intersection of federal and state law, [accordingly] we set out the pieces of the statutory puzzle before attempting to fit them together." *229 Main St. P'ship v. Mass. Dep't of Envtl. Prot. (In re 229 Main St. Ltd. P'ship)*, 262 F.3d 1 (1st Cir. 2001). This Court shall do likewise.

Section 362(b)(3) of the Bankruptcy Code excepts from the automatic stay "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title or to the extent that such act is accomplished within the period provided under section 547(e)(2)(A)." 11 U.S.C. § 362(b)(3).

Section 546(b)(1) provides:

>[t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that -

6

> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

11 U.S.C. § 546(b)(1). "The purpose of Section 546(b) is to protect creditors whom state law protects by allowing them to perfect their prepetition liens through post-petition notice." *Schafer v. Carolina Kitchen and Bath, Inc.* (*In re Orndorff Const., Inc.*) 394 B.R. 372, 376 (Bankr. M.D.N.C. Aug. 25, 2008) (citations omitted) (addressing postpetition perfection of a lien on real property where filing of a proof of claim or suit to enforce must be filed within 180 days of the last day goods were delivered or services performed).

To fit within § 362(b)(3)'s exception to the automatic stay, the following three elements must be present: "(1) an 'act to perfect'; (2) an 'interest in property'; and (3) a statute authorizing perfection in accordance with section 546(b)(1)(A)." *Ivester v. Miller,* 398 B.R. 408, 423 ( M.D.N.C. Dec. 4, 2008) (citations omitted). The first and third elements are not at issue in this case. The second element is determinative. "Both § 362(b)(3) and §546(b) refer to 'an interest in property,' a phrase that encompasses more than a 'lien.'"*In re Harrelson Utilities, Inc.*, 2009 WL 2382570 at * 2 (Bankr. E.D.N.C. July 30, 2009) (citing *Maryland Nat'l Bank v. Mayor of Baltimore (In re Maryland Glass Corp.*) 723 F.2d 1138, 1141-42 (4th Cir. 1983)). To determine whether the postpetition service of claim of lien upon funds fits within § 362(b)(3)'s exception to the automatic stay, the Court must analyze whether the subcontractors had a prepetition "interest in property." The Court must ask "what interest the creditor had in property before the petition was filed and the effect of that interest on a hypothetical purchaser who might have purchased the property before the creditor's 'interest was fully

perfected and enforceable by virtue of a statutory lien.'" *Id.* (quoting *Maryland Nat'l Bank v. Mayor of Baltimore (In re Maryland Glass Corp.*) 723 F.2d 1138, 1142 (4th Cir. 1983)).

The issue of whether the Lien Claimants had a prepetition "interest in the property" turns largely upon interpretation of North Carolina law. *Id.* (citation omitted). The North Carolina Constitution provides: "[t]he General Assembly *shall* provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor." N.C. Const. art. X, § 3. (emphasis added). This Constitutional mandate is accomplished through Chapter 44A of the North Carolina General Statutes. Chapter 44A, Article 2 of the North Carolina General Statutes provides protections for laborers and materialmen as it is the "materialman, rather than the mortgagee, [who] should have the benefit of materials that go into the property and give it value." *See Carolina Builders Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 229, 324 S.E.2d 626, 629 (1985) (stating "[t]he purpose of the materialman's lien statute is to protect the interest of the supplier in the materials it supplies").

In determining a statute's meaning or scope, the Court must first consider the statute's plain language. "[W]hen the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms." *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004)(citations omitted). Chapter 44A, Article 2, Part 2 of the North Carolina Statutes provides subcontractors with two lien claims: "(1) a claim of lien upon funds owed to the contractor, and (2) the right to assert, by subrogation, the lien rights of the contractor against the real property owned by the party for whom the contract is being performed." *In re Harrelson Utilities, Inc.*, 2009 WL 2382570 at * 3.

As to the lien on funds, North Carolina General Statute § 44A-18(1)-(3) provides that first, second, and third tier subcontractors who furnish labor, materials, or rental equipment "at the site of the improvement *shall be entitled* to a lien upon funds that are owed . . . ." N.C. Gen. Stat. § 44A-18(1)-(3) (emphasis added).

North Carolina General Statute § 44A-18(5) provides "[t]he lien upon funds *granted* under this section *shall* secure amounts earned by the lien claimant as a result of having furnished labor, materials, or rental equipment at the site of the improvement under the contract to improve real property, . . . ." N.C. Gen. Stat. § 44A-18(5) (emphasis added).

North Carolina General Statute § 44A-18(6) provides "a lien upon funds *granted* under this section *is perfected* upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice." N.C. Gen. Stat. § 44A-18(6) (emphasis added).

North Carolina General Statute § 44A-22 provides "[l]iens upon funds perfected under this Article have priority over all other interests or claims theretofore or thereafter created or suffered in the funds by the person against whose interest the lien upon funds asserted, . . . ." N.C. Gen. Stat. § 44A-22.

Finally, as to the lien on real property granted to subcontractors, North Carolina General Statute § 44A-23 provides in part: "[a] first tier subcontractor, who gives notice of claim of lien upon funds as provided in this Article, may, to the extent of this claim, enforce the claim of lien on real property of the contractor created by Part 1 of this Article." N.C. Gen. Stat. § 44A-23(a). Second or third tier subcontractors, "who [give] notice of claim of lien upon funds as provided in this Article,

9

may, to the extent of his claim, enforce the claim of lien on real property of the contractor created by Part 1 of Article 2" of this Chapter. N.C. Gen. Stat. § 44A-23(b)(1).

The plain and clear statutory language of these provisions explicitly provides that the lien on funds is granted upon the furnishing of materials, labor or rental equipment. N.C. Gen. Stat. § 44A-18(1)-(3) (providing that the subcontractor "shall be entitled to a lien upon funds."). All the subcontractor has to do to be entitled to the lien upon funds is furnish labor, materials, or rental equipment at the site of the improvement. N.C. Gen. Stat. § 44A-18(6). The word "entitlement" means "an absolute right to a benefit . . . granted immediately upon meeting a legal requirement." *Black's Law Dictionary*, 612 (9th ed. 2009). Accordingly, upon the subcontractor meeting the legal requirement of furnishing labor, materials or rental equipment, the subcontractor is granted and entitled immediately to the absolute right to an interest in the property (i.e. funds) which serve as collateral for the lien. Although the lien is not perfected at this time, the subcontractor still has the right to the benefit of a lien on funds, (i.e. the contractor's right to payment), and must proceed to perfect pursuant to N.C.G.S. § 44A-18(6). The lien upon funds once perfected is given a superpriority status. The "[l]iens upon funds perfected under this Article have priority over all other interests or claims theretofore or thereafter created or suffered in the funds by the person against whose interest the lien upon funds is asserted, . . . ." N.C. Gen. Stat. § 44A-22. Accordingly, if the lien upon funds is perfected postpetition, such liens would take priority over the trustee's strong arm powers.[2] North Carolina General Statute § 44A-18(6) provides "[a] lien upon funds *granted* under

---

[2]Even BB&T acknowledges in its memorandum that its lien on accounts receivable would be subject to a properly perfected lien on funds, which satisfies the § 546(b) requirement pursuant to N.C.G.S. § 44A-22 which grants the perfected lien on funds statutory superpriority over all other liens or claims.

10

this section *is perfected* upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. § 44A-19 and shall be effective upon the obligor's receipt of the notice." N.C. Gen. Stat. § 44A-18(6) (emphasis added).[3] Therefore, the lien that is granted is subject to perfection by the service of notice of claim of lien upon funds. The giving of the notice of claim of lien is merely the last step in perfecting the subcontractor's prepetition interest in property. The North Carolina Legislature in N.C.G.S. § 44A-18(6) uses the word "granted" and "perfected." This dichotomy of language "granted / perfected," demonstrates that the lien is "granted" upon the furnishing of materials, and the lien is then perfected upon giving the notice of claim of lien. The plain language of N.C.G.S. § 44A-18 sets forth two distinct sections of the statute. The "lien entitlement and lien grant" section and the "lien perfection" section. The plain meaning of the statute is supported by North Carolina case law.

The North Carolina Supreme Court recognizes the distinction between the "lien entitlement and lien grant" provisions and the "lien perfection" provisions of N.C.G.S. § 44A-18(1)-(5). *Contract Steel Sales, Inc. v. Freedom Constr. Co.*, 321 N.C. 215, 222, 262 S.E.2d 547, 550 (1987) (citations omitted). In *Contract Steel Sales, Inc.*, the North Carolina Supreme Court addressed the issue of whether a subcontractor was entitled to a lien upon funds when the materials were delivered to the jobsite, but were later rejected by the owner and removed from the project. *Contract Steel Sales, Inc.*, 321 N.C. at 218-219, 262 S.E.2d at 550. The owner and general contractor asserted that the subcontractor did not hold a valid lien because the materials were not incorporated into the improvement and the materials had been physically removed from the jobsite at the time the

---

[3]Since language of § 44A-18(6) states the lien on funds is already granted and entitled, the perfection and grant is not a simultaneous birthing or creation of the lien on funds as analyzed in *In re Harrelson Utilities, Inc.*, 2009 WL 2382570 at * 5 (Bankr. E.D.N.C. July 30, 2009).

subcontractor sought to perfect its lien and because the Notice of Claim of Lien upon funds was defective. *Contract Steel Sales, Inc.*, 321 N.C. at 219, 262 S.E.2d at 550.

The North Carolina Supreme Court held that actual incorporation into the improvement is not a statutory prerequisite and neither is it required that the materials be present at the jobsite at the time notice of lien is given. *Contract Steel Sales, Inc.*, 321 N.C. at 220, 262 S.E.2d at 550. In so holding, the Court recognized the distinction between the "lien entitlement and grant" provisions and the "lien perfection" provisions of N.C.G.S. §44A-18(1)-(6). *Contract Steel Sales, Inc.*, 321 N.C. at 222, 262 S.E.2d at 551-52 (citations omitted). The Court noted:

> [t]he subcontractor must prove performance of his contract to enforce the lien, but he need not show such performance in order *to assert his entitlement* to a lien. For this entitlement, he need only show that the materials were delivered to the site of the improvement. Having made such a showing here, [the subcontractor] is entitled to its lien if it is properly perfected . . . .

*Contract Steel Sales, Inc.*, 321 N.C. at 220, 262 S.E.2d at 550-51 (emphasis added).

The North Carolina Supreme Court acknowledged that "courts have recognized a distinction between the entitlement provisions on one hand and the perfection provisions on the other. Most courts hold that once entitlement to a lien has been established, statutory requirements concerning perfection must be liberally construed in favor of the lien claimant." *Contract Steel Sales, Inc.*, 321 N.C. at 222-23, 262 S.E.2d at 551-52 (internal citations omitted). Therefore, North Carolina Courts provide protection to subcontractors and entitle the materialmen's lien to arise upon delivery. The lien is then perfected pursuant to service of the Notice of Claim of Lien Upon Funds pursuant to N.C.G.S. § 44A-18(6).

Accordingly, the subcontractor's entitlement to the lien on funds arises upon delivery, creating an interest in the right to payments owed to the general contractor, which encompasses the grant of the lien on funds. This lien right is then subject to perfection by service of the Notice of Claim of Lien

upon Funds pursuant to N.C.G.S. §44A-18(6). Thus, "lien entitlement" and "lien perfection" are two separate and distinct acts.[4]

The term "interest in property" encompasses more than a lien. The First Circuit has extended 11 U.S.C. § 363(b)(3)'s exception to parties who served notices of superpriority liens postpetition where the liens that are perfected by those notices are given superpriority under applicable state law. *229 Main St. P'ship v. Mass. Dep't of Envtl. Prot. (In re 229 Main St. Ltd. P'ship)*, 262 F.3d 1 (1st Cir. 2001). The First Circuit held that the "term 'interest in property' as used in section 362(b)(3) is broader than the term 'lien.'" *Id.* at 6 (citations omitted). The Second and Seventh Circuits have also extended 11 U.S.C. § 362(b)(3)'s exception to situations where perfection takes place postpetition and provides for superpriority liens. *In re AR Accessories Grp., Inc.* 345 F.3d 454, 458 (7th Cir. 2003) (holding that actions taken postpetition to perfect a statutory lien, which once perfected would trump earlier filed claims, fell within the exception of 11 U.S.C. § 362(b)(3), even when the statute did not expressly provide for retroactive perfection of the lien); *In re Lionel Corp.*, 29 F.3d 88 (2d Cir. 1994) (holding that "[a]s long as an 'applicable law' authorizes perfection after another party has acquired interests in the property, a lienor fits within the exception.").

The Fourth Circuit addressed the issue of whether a postpetition perfection of a tax lien was permissible under 11 U.S.C. § 362(b)(3) in *Maryland Nat'l Bank v. Mayor and City Council of Baltimore (In re Maryland Glass Corp.)*, 723 F.2d 1138 (4th Cir. 1983). There the Fourth Circuit set forth the proper mechanism for determining whether a creditor has an "interest in property." The

---

[4]Not only does the subcontractor have an interest in the right to payment of debtor, but also has an interest in the real property through its right to enforce a claim of lien of the contractor on real property pursuant to N.C.G.S. § 44A-23. As the North Carolina Supreme Court held "N.C.G.S. § 44A-23 provides first-,second-, and third-tier subcontractors a right of subrogation to the lien of the contractor who dealt with the owner." *Electric Supply Co.*, 328 N.C. at 654, 403 S.E.2d at 293.

Court stated that it must consider what interest the creditor had in property before the petition was filed and the effect of that interest on a hypothetical purchaser who might have purchased the property before the creditor's "interest was fully perfected and enforceable by virtue of a statutory lien." *Id.* at 1142. In addressing 11 U.S.C. § 546(b) the Fourth Circuit noted:

> Congress in enacting § 546(b) perceived that the mere intervention of a petition in bankruptcy should not be permitted to default what would otherwise be a valid security interest in property. If that interest awaits perfection, and if the generally applicable state law permits that perfection to be good against an intervening purchaser, then the trustee should stand in no better shoes than such an intervening purchaser.

*Maryland Glass*, 723 F.2d at 1143.

Here, the Lien Claimants each were granted a lien on funds prepetition and could perfect the lien on funds by serving the Notice of Claim of Lien Upon Funds prepetition. This grant and entitlement to the interest in property (i.e. right to payment), arose upon the first furnishing of materials by the Lien Claimants to the Debtor's construction projects. This analysis is consistent with the plain language of N.C.G.S. § 44A-18 (1)-(6) as heretofore analyzed.

Concerning liens on real property, courts have reasoned that a general contractor may file its claim of lien on real property despite the automatic stay, because the general contractor's lien relates back to its first date of furnishing labor or materials and that prior to perfection of the lien, a bona fide purchaser of the real property cannot take free of the inchoate interest of the prime's lien. *In re Harrelson Utilities, Inc.*, 2009 WL 2382570 at *4 (stating "[u]nlike a lien on real property, which, based on the effective date provision of § 44A-10, has priority over claims against the real estate filed after the date on which labor or materials were first furnished, a subcontractor's lien on funds has priority ahead of all other interest whenever created."). Courts have held that there is a sufficient "interest in property" at the time of filing the petition, because the real property cannot be transferred free of the lien, even if the claim of lien is not filed as of the date of the transfer of property.

However, a claim of lien upon real property is just as amorphous and just as inchoate as a claim of lien on funds, if not perfected by filing a notice of claim on real property within the specified time period. Claims of lien on real property must be filed within 120 days after the last furnishing of labor or materials to the job site. N.C. Gen. Stat. § 44A-12(b). Further, North Carolina law requires the timely commencement of an enforcement action in order to preserve a materialman's lien on real property. If these time requirements are not adhered to, the lien is discharged. *Schafer v. Carolina Kitchen and Bath, Inc. (In re Orndorff Constr., Inc.)*, 394 B.R. 372, 378 (Bankr. M.D.N.C. Aug. 25, 2008) (finding that under North Carolina law an action to enforce a materialman's lien must be filed within 180 days after the last furnishing of labor or materials or the lien is discharged).

The right to payment from the obligor is the "interest in property" upon which the lien claimants rely to satisfy § 362(b)(3) and § 546(b). Similar to a lien upon real property, the right to payment cannot be transferred free of the inchoate lien rights in the right to payment created by the lien on funds.[5] Just as a purchaser of the real property cannot take free of the lien in real property, an intervening purchaser of a debtor's accounts cannot take free of the superior lien in that property right created by N.C.G.S. § 44A-18, even prior to the lien holder serving the Notice of Claim of Lien Upon Funds. *Trustees of Garden of Prayer Baptist Church v. Geraldco Builders*, 78 N.C.App. 108, 115, 336 S.E.2d 694, 698 (1985) ("labor and material liens which have been properly perfected *have priority over all other claims* created in the funds by the person against whose interest the lien is asserted." (emphasis in original)). The transferee of real property or funds (i.e. right to payment, accounts receivable) does so knowing that the lien on real property or on funds may be subsequently perfected.

---

[5] BB&T admits its lien on accounts receivable would be inferior to a properly perfected lien on funds.

15

Finally, the Court recognizes that public policy arguments fall on both sides of this issue. Chapter 11 should give debtors a reasonable chance to formulate a confirmable reorganization plan and stay creditors from collection efforts. The Harrelson Utilities analysis certainly gives a Chapter 11 debtor the potential to have more funds available for its operations to reorganize at the expense of those who provide labor and materials.

However, the North Carolina Supreme Court discussed the policy objectives of the North Carolina lien Statutes and noted:

> [a]n adequate lien is intended to foster the construction industry, which operates largely on credit. Suppliers, including architects and surveyors, among many others, provide labor and materials to contractors and subcontractors who perform their portion of the work on a project. Since the contractor or subcontractor is generally not paid until the job, or a portion of it, is completed (and is probably unable to pay until it, in turn, is paid), their suppliers extend labor and materials to them on credit. An adequate lien is necessary to encourage responsible extensions of credit, which are necessary to the health of the construction industry.

*Electric Supply Co. of Durham, Inc.*, 328 N.C. at 659, 403 S.E.2d at 296 (citations omitted). Here, the Debtor owes substantial amounts of debt to subcontractors and material suppliers. *Supra*, note 1, at 2. If the lien on funds of subcontractors and material suppliers' liens were prohibited from being perfected by the automatic stay, the policy objective of the North Carolina lien statute would be frustrated. This would in effect allow contractors such as the Debtor to file for bankruptcy and subsidize its operations on funds the N.C. Constitution and General Assembly clearly intended to be subject to a granted, entitled and subsequently perfected lien on funds. "The purpose of the materialman's lien statute is to protect the interest of the supplier in the materials it supplies; the materialman, rather than the mortgagee, should have the benefit of materials that go into the property and give it value." *Carolina Builders Corp.* 72 N.C. App. at 229, 324 S.E.2d at 629.

North Carolina General Statutes §§ 44A-18(1)-(6) and 44A-22 are plain and clear. A subcontractor who furnishes labor, materials, or rental equipment at the site of the improvement *shall be entitled and granted* a lien upon funds (i.e. right to payment interest in property) that are owed to the contractor or subcontractor, and such lien on funds *granted* is *perfected* upon the giving of notice of claim of lien upon funds in writing to the obligor.

In the case at bar, Debtor hopes to use its receivables to pay an Internal Revenue Service priority claim on trust fund taxes on which its officers may have personal liability of over $1 million and pay its main secured creditor BB&T over $1.25 million with the "blood, sweat and tears" of its subcontractors.[6] No longer will North Carolina subcontractors be deprived of their statutorily created and granted lien on funds. As the U.S. District Court stated, this practice has "turned the construction industry's standard operating procedure on its head." *Ferguson Enterprises, Inc. of Virginia v. Mammoth Grading, Inc.* No. 5:10-cv-0316-H at 3.

The Emergency Motion for Order to Determine Extent of Stay is **GRANTED.** Postpetition service of a North Carolina statutory claim of lien on funds and the right to assert by subrogation the lien rights of the contractor against the real property pursuant to N.C.G.S. § 44A-23 are permitted exceptions to the automatic stay pursuant to 11 U.S.C. § 362(b)(3). Since the exception is applicable, the request for Order Granting Relief from Stay to Perfect Liens under Chapter 44A of the North Carolina General Statutes is **MOOT.** No motion to lift, terminate or modify the automatic stay is required.

**SO ORDERED.**

**END OF DOCUMENT**

---

[6] The Debtor is obligated to BB&T on multiple promissory notes. The approximate payoff due and owing to BB&T under the notes as of the petition date, exclusive of attorney's fees and costs was approximately $1,259,788.65.