**SO ORDERED.**

**SIGNED this 01 day of October, 2012.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

CONSTRUCTION SUPERVISION SERVICES, INC.,

DEBTOR

CHAPTER 11
CASE NO. 12-00569-8-RDD

### ORDER DENYING APPROVAL
### OF THE DEBTOR'S DISCLOSURE STATEMENT
### AND SUPPLEMENT TO DISCLOSURE STATEMENT

Pending before the Court is the Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code (the "Disclosure Statement") filed by Construction Supervision Services, Inc. (the "Debtor") on July 9, 2012 and the Supplement to Disclosure Statement (the "Supplement") filed by the Debtor on September 21, 2012. The United States Bankruptcy Administrator, Branch Banking & Trust Company ("BB&T"), Ferguson Enterprises, Inc., May Heavy-Equipment Rental & Sales, Inc., FSC II, LLC d/b/a Fred Smith Company, Cincinnati Insurance Company, Mack Industries, Inc., Doster Construction Company, EPOCH Properties, Currie Hauling, Inc., Keystone Transport Company, Inc., Sitescapes, LLC/Venture Engineering, P.A., Southern Garden, Inc., Stay-Right Precast Concrete, Inc., The Lane Construction Corporation d/b/a Rea Contracting, Caterpillar

Financial Services d/b/a FCC Equipment Financing, and CCA Financial LLC, (collectively the "Creditors") filed objections to the Debtor's Chapter 11 Plan of Reorganization (the "Plan") and the Disclosure Statement. BB&T filed a motion to continue the hearing on the Debtor's Chapter 11 Plan and Disclosure Statement on September 25, 2012. The Court conducted a hearing on September 26, 2012, in Wilson, North Carolina to consider the motion to continue, the Disclosure Statement and the Supplement.

## BACKGROUND

On January 24, 2012, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code. "The Debtor is a North Carolina corporation and operates a full service construction company. The Debtor primarily performs utility and site work on projects in eastern and central North Carolina." Disclosure Statement at 4, *In re Constr. Supervision Services, Inc.*, No. 12-00569-8-RDD (Bankr. E.D.N.C. July 9, 2012). Debtor has retained possession of its assets and has operated as a debtor in possession since the petition date. *Id.*

On July 9, 2012, the Debtor filed its Disclosure Statement and Chapter 11 Plan. On September 21, 2012, the Debtor filed the Supplement to Disclosure Statement.

BB&T is the primary secured creditor of the Debtor pursuant to four (4) promissory notes. BB&T is secured by the Debtor's real property, accounts receivable, general intangibles, supporting obligations and products thereof. The total amount of unpaid principal and interest outstanding under the promissory notes on the petition date was $1,265,868.55, exclusive of attorneys' fees, costs, and postpetition interest.

Multiple lien claimants have filed claims of lien upon funds and claims of lien upon real property pursuant to Chapter 44A of the North Carolina General Statutes.

The Debtor has significant administrative claims related to unpaid postpetition equipment lease obligations, the most significant being that of CCA Financial, LLC ("CCA"). At the hearing, the Debtor represented that the total amount of administrative claims is approximately $617,000.00 with CCA claiming approximately $317,508.79 of that amount.

The Creditors object to the Disclosure Statement on the grounds that it fails to provide enough adequate information as required by 11 U.S.C. § 1125.

## **DISCUSSION**

Both bankruptcy courts and creditors "rely on a debtor's disclosure statement in determining whether to vote for or approve a proposed plan of reorganization." *In re Radco Properties, Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. March 9, 2009) (citing *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir. 1996), *Nelson v. Dalkon Shield Claimants Trust* (*In re A.H. Robins Co., Inc.*), 216 B.R. 175, 180 (E.D.Va. 1997), *aff'd without opinion* 163 F.3d 598, 1998 WL 637401 (4th Cir. 1998)). Creditors rely on the disclosure statement to determine what distribution or other assets they will receive and also what risks they will face. *Id.* (citing *In re Nelson*, 216 B.R. at180). Accordingly, "the importance of full and honest disclosure is critical and can not be overstated." *Id.* (citing *In re Ryan Operations*, 81 F.3d at 362.)

Section 1125(a)(1) defines adequate information as:

[I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interest in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of

> the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

In determining the adequacy of information under § 1125(a)(1), the bankruptcy court reviews the information on a case by case basis. *In re Newkirk*, No. 11-05896-8-RDD, 2012 WL 830552 at *3 (Bankr. E.D.N.C. March 9, 2012) (citing *In re Radco Prop., Inc.*, 402 B.R. 666, 682 (Bankr. E.D.N.C. 2009) (citing *In re A.H. Robins, Co.*, 880 F.2d 694 (4th Cir. 1989))). A disclosure statement should "provide the creditors with an accurate basis for determining their position and their ability to make an informed decision with regard to the acceptance or rejection of the [p]lan." *Id.* (quoting *In re Hendrix-Barnhill Co., Inc.*, No. 11-01974-8-RDD, 2011 WL 5902740 at *3 (Bankr. E.D.N.C. Oct. 27, 2011)).

The Creditors contend the disclosure statement fails to provide adequate information regarding the Plan's feasibility. BB&T asserts that based on financial reporting received from the Debtor, the accounts receivable have declined precipitously and that the Debtor's most recent cash collateral budget forecasts a debtor in possession account balance at the end of September, 2012 of just $28.00. Based on this, BB&T contends the Debtor does not have sufficient income and the Plan is not feasible.

Based upon the evidence presented at the hearing and the pleadings filed in this case, the Court finds that the Disclosure Statement and Supplement fail to provide adequate information as to the Debtor's ability to fund and maintain the Plan, necessary for the Creditors to make an informed decision.

The Disclosure Statement filed on July 9, 2012 provides:

> At the time of the filing of this Disclosure Statement, the Debtor has a pending motion to sell a material portion of its equipment to Triton Sitework Development, LLC ("Triton.") A copy of that Motion is attached hereto as Exhibit "A." The Debtor has

> begun working cooperatively on jobs with Triton, and has had significant discussions about the possibility of a merger, joint venture, sale, or other combination or cooperative arrangement with Triton. The Debtor and Triton believe that such an arrangement would be beneficial to the Debtor, its creditors, and Triton. The Plan allows, but does not require, a sale of the Debtor's assets or merger with Triton or another entity. In such event, the merged or acquiring entity would assume the Debtor's obligations under the Plan. The Plan also allows the Debtor to sell assets for fair value free and clear of the liens retained in the Plan, with such liens shall attach to the proceeds of such sales.

Disclosure Statement at 4, *In re Constr. Supervision Services, Inc.*, No. 12-00569-8-RDD (Bankr. E.D.N.C. July 9, 2012). A consent order was entered on July 27, 2012, regarding the motion to sell a material portion of the Debtor's equipment, as referenced in the above paragraph.

Other than the above paragraph, the Disclosure Statement is devoid of any other information regarding Triton. On Friday, September 21, 2012, at 4:28 p.m., less than five (5) days prior to the hearing, the Debtor filed a Supplement to Disclosure Statement. The Supplement provides that the Debtor expects Triton to acquire a controlling interest in the Debtor and as a part of the anticipated acquisition, Triton intends to secure financing sufficient to enable it to guarantee or assume the Debtor's obligations under the Plan. Supplement to Disclosure Statement at 1, *In re Constr. Supervision Services, Inc.*, No. 12-00569-8-RDD (Bankr. E.D.N.C. Sept. 21, 2012). The Supplement consists of five (5) pages, including an attached one (1) page "Triton/CSSI Consolidated Cash Flow" statement with projected revenues for 2013 and 2014, a liquidation analysis, and an Accounts Receivables valuation sheet. The Supplement does not provide where the information regarding the figures was obtained or any other substantiating documentation relating to Triton's solvency or financial health. Nor does the Supplement include the terms, structure, or financial details of any arrangement with Triton.

At the hearing, the Debtor confirmed the possibility of merging with Triton, but represented that no written merger agreement was in place and that if the Debtor's Plan was not confirmed on the hearing date, Triton would back out of the deal and the possibility of merger would no longer exist. Counsel for the Debtor admitted that this was the "worst disclosure statement" he had ever filed, but based on the circumstances of the Debtor's case, it was the best disclosure statement that could be filed.

Michael Preston, development officer of the Debtor, testified on behalf of the Debtor. Mr. Preston represented that the Debtor was unable to include additional information in the Disclosure Statement or the Supplement as to Triton because there was not a definite agreement in place and because some of the information was confidential. Mr. Preston testified that a deal between the Debtor and Triton was contingent upon: (1) Triton obtaining financing with a capital investor to enable it to guarantee or assume the Debtor's obligations under the Plan; (2) Triton peforming its due diligence, inspecting financial records of the Debtor and the Debtor's equipment; and (3) working out a deal with CCA regarding its $317,508.79 administrative claim. Mr. Preston testified that the capital investor is a lending institution. He represented that as of the hearing date, Triton had yet to receive financing, because the anticipated capital investor conditioned financing upon the Debtor obtaining confirmation of the Plan. Mr. Preston testified that the Debtor provided the anticipated capital investor with information about Triton and the Debtor regarding what type of business the two entities operate, including accounts receivable reports, cash statements, income statements, a ballot sheet, a list of customers, a forecast of jobs to be bid on by Triton after the merger with the Debtor, and estimated cash flows of Triton after the merger with the Debtor. Mr. Preston testified that the exhibits attached

to the Supplement did not provide sufficient data and information as to what the combined entities could generate going forward and were not sufficient for a potential lender to review.

"Because the success of the Debtor's chapter 11 case is clearly contingent on [Triton's contributions], in order to provide adequate information, Debtor must disclose information regarding [Triton's] financial situation that shows [its] ability to make such contributions." *See In re Forest Grove, LLC,* 448 B.R. 729, 735 (Bankr. D.S.C. March 3, 2011) (citing *In re Repurchase Corp.*, 332 B.R. 336, 342 (Bankr. N.D.Ill. 2005) (holding that debtor company's president's declaration that his wife would contribute needed capital to the debtor was "sheer speculation and wishful thinking" in the "absence of any form of corroboration or contract from the alleged sources of the [] funds" and therefore could not satisfy feasbility requirement for plan confirmation); *In re Wiston XXIV*, *Ltd. P'ship*, 153 B.R. 322, 327-28 (Bankr. D. Kan.1993) (holding that plan was not feasible in spite of general partner's promise to contribute $100,000 because the general partner showed no proof he could actually make the payment)). Without this information, the Plan is based on an unknown agreement, with an unknown entity, that has not yet been executed. Failing to disclose information regarding how plan payments are to be funded and the structure and transactions contemplated between the Debtor and Triton, would not give a creditor, much less a hypothetical investor, sufficient information to make an informed judgment concerning the Plan. While the Disclosure Statement states the Debtor "believes it will be able to make the payments called for by the Plan," it does not provide information regarding the projected future amount of income and how this income will be generated. Disclosure Statement at 4, *In re Constr. Supervision Services, Inc.*, No. 12-00569-8-RDD (Bankr. E.D.N.C. July 9, 2012). Nor is any information provided regarding any new work in which the Debtor intends to undertake in order to make the Plan feasible. Therefore, the Disclosure Statement and

Supplement do not contain adequate information regarding Debtor's future income and its proposed arrangement with Triton.

Additionally, the Disclosure Statement and Supplement fail to provide adequate information regarding the Debtor's substantial administrative claims and the ability of the Debtor to satisfy such claims in full on the Effective Date of the Plan. Administrative Expense Claims are treated in Class 1 of the Plan. The Disclosure Statement states, "there are substantial administrative claims related to unpaid postpetition equipment lease obligations - the most significant being owed to CCA Financial, LLC." Disclosure Statement at 4, *In re Constr. Supervision Services, Inc.*, No. 12-00569-8-RDD (Bankr. E.D.N.C. July 9, 2012). The Debtor proposes to pay the administrative claims in full on the effective date or as may be agreed upon by each claimant. *Id.* At the hearing, the Debtor represented that the total amount of administrative claims was approximately $617,000.00, with CCA Financial, LLC ("CCA") being owed approximately $317,508.79 of that amount. As of the hearing date, the Debtor was in default on its payments to CCA. The Debtor informed the Court that the very morning of the hearing, it negotiated terms with CCA regarding CCA's administrative claim. The negotiated terms require the Debtor to make a $30,000.00 adequate protection payment on or before Friday, September 28, 2012. Once the Debtor's Plan is confirmed, the Debtor is to submit to CCA monthly payments in the amount of $39,408.96, plus sales tax, for six (6) months, followed by monthly payments of $78,817.92, plus sales tax, for thirty (30) months. Based on this agreement, CCA would forego all collection against the Debtor on its administrative claim. However, should the Debtor fail to comply with the negotiated terms, CCA would have the right to repossess its equipment from the Debtor and accelerate the total amount owed. The agreement with CCA and CCA's right to repossess critical equipment upon default, the identity of the administrative claimants, and the amount of the

Debtor's administrative claims, are material facts that are necessary for creditors to make an informed decision on the Plan. Further, the Disclosure Statement fails to provide any information regarding its ability to fund these administrative expenses. The Disclosure Statement and Supplement do not contain adequate information regarding the administrative claims and the ability of the Debtor to satisfy such substantial claims.

Finally, the Disclosure Statement and Supplement insufficiently address the treatment of the secured lien claimant's lien claims. The Disclosure Statement provides "all parties holding lien rights in funds owed or in real estate pursuant to Chapter 44A of the North Carolina General Statutes shall retain such rights. All such parties may pursue their lien rights under applicable North Carolina law." Disclosure Statement at 9, *In re Constr. Supervision Services, Inc.*, No. 12-00569-8-RDD (Bankr. E.D.N.C. July 9, 2012). This proposed treatment fails to clearly identify with particularity the manner in which Class 15 lien claimants will be treated. The Disclosure Statement fails to provide any analysis of what dollar amounts are owed to the Debtor to which the liens of Class 15 claimants would attach. Although the Supplement provides an Accounts Receivable Liquidation Analysis, this analysis does not disclose the individual lien claimants on individual jobs. Nor does the Disclosure Statement, the Supplement, or the Plan provide treatment for lien claimants who are not paid under Chapter 44A of the North Carolina General Statutes. The Disclosure Statement and Supplement do not contain adequate information regarding the treatment of the Chapter 44A lien claims and treatment of lien claims that are not paid under Chapter 44A of the North Carolina General Statutes.

The complexity of this case requires inclusion of the above information because without knowledge of the Debtor's income or the proposed agreement with Triton, parties voting on the Plan cannot make an informed decision. The benefit to the creditors or other parties in interest is

9

substantial because it will allow them to evaluate the Plan based on full disclosure rather than an unknown arrangement with an unknown entity, and will provide creditors with information regarding the substantial administrative claims and necessary information regarding lien claims. The cost of providing this information is minimal. Based on the testimony of Mr. Preston, information regarding the books and records of Triton has previously been provided to the capital investor. Further, because the Supplement was not filed until less than five (5) days prior to the hearing date, creditors did not have sufficient time to review the additional information included within the Supplement.

## **CONCLUSION**

Therefore, the Court finds the Disclosure Statement and the Supplement do not provide adequate information within the meaning of § 1125(a). The Debtor may file a second disclosure statement on or before October 25, 2012. The second disclosure statement should provide information that was provided to the capital investor as discussed herein, including financial statements of Triton and information relating to the financial strength of Triton, so creditors can properly evaluate whether the anticipated merger is in their best interest. The second disclosure statement should provide an administrative expense analysis going forward, including cash flow projections, what administrative expenses remain unpaid, and other projected expenses going forward. Finally, the second disclosure statement should provide a basis for the projections provided in Exhibit A of the Supplement. Most of all, the second disclosure statement should disclose the facts regarding the existence of a merger, sale, or contract with Triton, which will be effective upon confirmation, rather than the hope that a deal and financing will be obtained only if the Court will confirm the Plan. The objections to the

Disclosure Statement and Supplement are **SUSTAINED**. The Disclosure Statement and Supplement are **NOT APPROVED**.

**SO ORDERED.**

**END OF DOCUMENT**