**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-1560

In Re: CONSTRUCTION SUPERVISION SERVICES, INC.,

        Debtor.

-------------------------------

BRANCH BANKING & TRUST COMPANY,

        Creditor - Appellant,

    v.

CONSTRUCTION SUPERVISION SERVICES, INC.,

        Debtor - Appellee,

HANSON AGGREGATES SOUTHEAST, LLC; COUCH OIL COMPANY OF DURHAM, INC.; R.W. MOORE EQUIPMENT CO.; H.D. SUPPLY WATERWORKS, LTD; WATER WORKS SUPPLY, INC.; MSC WATERWORKS, INC.; GREGORY POOLE EQUIPMENT COMPANY; THOMAS CONCRETE OF CAROLINA, INC.; THE JOHN R. MCADAMS COMPANY, INCORPORATED,

        Creditors - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:12-cv-00533-BO; 8:12-bk-00569-RDD)

Argued: January 28, 2014        Decided: May 22, 2014

Before KING, SHEDD, and WYNN, Circuit Judges.

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge King and Judge Shedd joined.

———————

**ARGUED:** Nicholas C. Brown, HOWARD, STALLINGS, FROM & HUTSON, P.A., Raleigh, North Carolina, for Appellant.  William John Wolf, BUGG & WOLF, PA, Durham, North Carolina, for Appellees.  **ON BRIEF:** Joseph H. Stallings, James B. Angell, Russell W. Johnson, HOWARD, STALLINGS, FROM & HUTSON, P.A., for Appellant.  Ethan J. Fleischer, BUGG & WOLF, PA, Durham, North Carolina, for Appellees Hanson Aggregates Southeast, LLC, Couch Oil Company of Durham, Inc., and R.W. Moore Equipment Co.  Paul A. Sheridan, Nancy E. Hannah, HANNAH SHERIDAN LOUGHRIDGE & COCHRAN, LLP, Raleigh, North Carolina, for Appellees H.D. Supply Waterworks, LTD, Water Works Supply, Inc., Gregory Poole Equipment Company, Thomas Concrete of Carolina, Inc., and The John R. McAdams Company, Incorporated.

———————

WYNN, Circuit Judge:

Generally, after a debtor files a bankruptcy petition, 11 U.S.C. § 362(a)(4) provides for an automatic stay of any attempts by creditors to collect on their claims against the debtor. But exceptions exist, including an exception under Section 362(b)(3) for "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under [11 U.S.C. § 546(b).]" 11 U.S.C. § 362(b)(3). In essence, Section 362(b)(3) provides an exception for those with an interest in property that predates the bankruptcy petition but is not yet perfected at the time the debtor files for bankruptcy if, in the absence of the bankruptcy filing, the perfected interest would be effective against a third party acquiring rights prior to that perfection.

At the heart of this appeal is whether construction subcontractors entitled to a lien on funds under North Carolina law had an interest in property when the debtor contractor filed for bankruptcy, by which time the subcontractors had not yet served notice of, and thereby perfected, their liens. A careful review leads us to conclude that the answer is yes. And because there is no dispute that the other criteria of the applicable bankruptcy stay exception have been met, we hold that the bankruptcy court and district court correctly allowed the

3

subcontractors to serve notice of, and thereby perfect, their liens post-petition.

I.

Debtor Construction Supervision Services ("CSS"), a full-service construction company, filed a Chapter 11 bankruptcy petition in January 2012. CSS, acting as general contractor or as a first tier subcontractor, placed orders with the Creditor Appellee Subcontractors (named in the case caption) (the "Subcontractors"). These first tier and second tier suppliers in turn provided CSS with materials such as stone, concrete, and fuel to run equipment. The Subcontractors delivered the requested materials to CSS on an open account, later invoicing CSS for the amounts owed them.

After CSS's January 2012 bankruptcy filing, the Subcontractors sought to serve notice of, and thereby perfect, liens on funds others owed CSS. Specifically, they asked the bankruptcy court to clarify the extent of the stay to determine whether their post-petition notice and perfection would fall within the stay's ambit.

Branch Banking & Trust Company ("BB&T"), which had lent CSS over one million dollars, secured by, among other things, CSS's accounts and real property, objected to the Subcontractors' post-petition notice and perfection. BB&T argued that the

4

Subcontractors lacked an interest in property because they had not yet served notice of, and thereby perfected, their liens by the time CSS filed its bankruptcy petition. The Subcontractors maintained that the stay did not block them from noticing and perfecting post-petition because doing so fell under a stay exception for property interests that predate bankruptcy petitions, the post-petition perfection of which would be effective against third parties who acquired a pre-perfection interest.

The bankruptcy court acknowledged that there existed opinions from its own district (the Eastern District of North Carolina) in BB&T's favor. In re Constr. Supervision Servs., Inc., 12-00569-8-RDD, 2012 WL 892217, at *1 (Bankr. E.D.N.C. Mar. 14, 2012). But the bankruptcy court disagreed with those decisions and ruled against BB&T, holding that the Subcontractors had an interest in property upon delivery of the materials and equipment, i.e., before lien notice and perfection. Id. at *2-4. And because all other requirements for the pertinent stay exception were concededly met, the Subcontractors were not stayed from noticing, i.e., perfecting their liens. Id.

BB&T appealed to the district court, which, like the bankruptcy court, held that Creditor Appellees' post-petition notice and perfection of their statutory claim of lien on funds

5

constituted a permitted exception to the bankruptcy code's automatic stay. BB&T further appealed to this Court, which reviews the legal issues at stake here de novo. See, e.g., In re Quigley, 673 F.3d 269, 271 (4th Cir. 2012).

II.

On appeal, BB&T primarily contends that because the Subcontractors failed to notice their liens on funds before CSS filed for bankruptcy, the Subcontractors lacked an interest in property at the time CSS filed its petition. We disagree.

A.

Upon the filing of a Chapter 11 bankruptcy petition, creditors are automatically stayed from attempting to collect on claims against the debtor. In other words, the stay protects the bankruptcy estate from dismemberment via a creditor race to the courthouse in favor of a systematic and equitable asset distribution. See, e.g., Safety-Kleen, Inc. (Pinewood) v. Wyche, 274 F.3d 846, 864 (4th Cir. 2001) ("A chief purpose of the automatic stay is to allow for a systematic, equitable liquidation proceeding by avoiding a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." (quotation marks omitted)). Bankruptcy Code Section 362 describes the scope of the stay, listing what does, and does not, fall within its ambit. Amongst

6

those things the stay bars are "any act[s] to create, perfect, or enforce any lien against property of the estate[.]" 11 U.S.C. § 362(a)(4).

As with most things, exceptions to the stay exist. Crucially for this case, Section 362(b)(3) provides an exception for "any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) . . . ." 11 U.S.C. § 362(b)(3).

Section 546(b), in turn, subjects the bankruptcy trustee's rights and powers to generally applicable laws that "permit[] perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . ." 11 U.S.C. § 546(b). In other words, Section 546(b) "protect[s], in spite of the surprise intervention of a bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection." S. Rep. 95-989, 86, 1978 U.S.C.C.A.N. 5787, 5872. See also In re Maryland Glass Corp., 723 F.2d 1138, 1141 (4th Cir. 1983) ("'[T]he intervention of a petition . . . should not cut off an interest holder's opportunity to perfect where the interest holder could have perfected against an entity subsequently acquiring rights in the property if bankruptcy had

7

not intervened.'" (quoting 4 Collier on Bankruptcy § 546.03[2], at 546-48 (15th ed. 1983))).

Both Section 362(b)(3) and Section 546(b) refer to "an interest in property"—the phrase on which this appeal turns. If the Subcontractors had an "interest in property" when CSS filed for bankruptcy, the parties agree that the Subcontractors fulfill all of the other Section 362(b)(3) exception criteria and may thus notice and perfect their interests post-petition.

To determine whether the Subcontractors had an interest in property, we must consider what "interest in property" means. In doing so, we look first to the plain language of the term, which Congress failed to define. We may consult dictionaries to get at its "'plain or common meaning.'" Blakely v. Wards, 738 F.3d 607, 611 (4th Cir. 2013) (en banc) (quoting Nat'l Coal. for Students with Disabilities Educ. & Legal Def. Fund v. Allen, 152 F.3d 283, 289 (4th Cir. 1998)).

According to Black's Law Dictionary, an interest in property is "[a] legal share in something; all or part of a legal or equitable claim to or right in property." Black's Law Dictionary 816 (7th ed. 1999). The American Heritage Dictionary defines interest as a "right, claim, or legal share[.]" American Heritage Dictionary 914 (5th ed. 2011). And the Oxford English Dictionary Online defines it as "legal concern *in* a thing; esp. right or title to property, or to some of the uses

8

or benefits pertaining to property." Oxford English Dictionary Online, available at http://www.oed.com/view/Entry/97735?rskey=rk3c1C&result=1&isAdvanced=false#eid (last visited April 21, 2014).

This Court has already made plain that the broad term "interest in property" encompasses more than just liens. In re Maryland Glass Corp., 723 F.2d at 1141–42 (stating that "section 546(b) speaks of an 'interest in property' and does not limit its scope to 'liens'" and holding that, under local law, government had an interest in land for tax purposes, the absence of perfected liens notwithstanding). We are not the only circuit court to have done so. See, e.g., In re 229 Main St. Ltd. P'ship, 262 F.3d 1, 7 (1st Cir. 2001) ("We hold that 'interest in property,' as that term is used in 11 U.S.C. § 362(b)(3), is unequivalent to, and broader than, the term 'lien.'"); In re AR Accessories Grp., Inc., 345 F.3d 454, 459 n.4 (7th Cir. 2003) (calling a wage lien "a mechanism for . . . enforcement of a preexisting right" that does not "create any new interest within the meaning of 11 U.S.C. § 546(b)").

That courts have differentiated between "interests" and "liens" makes sense—because, while they are closely related, they are logically distinct from one another. Specifically, a lien secures an interest that already exists. See, e.g., In re AR Accessories, 345 F.3d at 458-59 (describing lien as "a

9

mechanism for . . . enforcement of a preexisting right"); 51 Am. Jur. 2d Liens § 2 (2014) ("A lien is a cause of action, a remedy . . ., or a method by which to enforce an underlying claim. That is, a lien is part and parcel of the underlying claim, the former existing only because of the latter." (footnotes omitted)). Indeed, BB&T essentially concedes as much when it notes that "Chapter 44A provide[s] certain remedies . . . to laborers and materialmen who furnished services or materials toward the improvement of real property[,]" "includ[ing] the right to obtain a lien on funds . . . ." Appellant's Br. at 21.

We find the Seventh Circuit's analysis in In re AR Accessories particularly illuminating. In that case, state law provided a government agency with a statutory lien on the property of an employer that failed to pay its employees for services rendered. 345 F.3d at 458. Per statute, the lien took effect only upon the agency's filing a verified petition claiming the lien. Id. at 456-57. Despite the absence of express statutory language to that effect, the Seventh Circuit held that the effective date of the lien in the employer's property was when the employees performed the last unpaid services. Id. at 459 n.4. The Seventh Circuit noted that the filing of the lien petition merely provided notice of the claim on the employer's property for unpaid services but did not

10

"create any new interest" in property for Section 546(b) purposes. Id.

Similarly, here, we must determine whether the Subcontractors had an interest in property despite their not yet having served noticed of, i.e., perfected, liens under North Carolina law prior to CSS's filing for bankruptcy. To determine when the Subcontractors' interests in the funds arose, we must turn to the pertinent North Carolina laws.

B.

The North Carolina Constitution mandates that the General Assembly "shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor." N.C. Const. art. X, § 3. To this end, the North Carolina legislature has enacted laws codified in Chapter 44A of North Carolina's General Statutes.

The main statute at issue in this appeal is Section 44A-18, titled "Grant of lien upon funds; subrogation; perfection[.]" N.C. Gen. Stat. § 44A-18 (2012).[1] Under this law, a subcontractor "is entitled to a lien upon funds owed to the contractor with whom the . . . subcontractor dealt arising out

---

[1] As discussed in more detail below, Section 44A-18 was amended in 2012, effective January 2013—hence the specification of the date. It is undisputed that the 2012 version of the statute, and not the 2013 version, is the operative law for this case.

11

of the improvements on which the . . . subcontractor worked or furnished materials." O & M Indus. v. Smith Eng'g Co., 624 S.E.2d 345, 348 (N.C. 2006). Specifically, the statute states:

> Upon compliance with this Article:
>
> (1) A first tier <u>subcontractor who furnished labor, materials, or rental equipment</u> at the site of the improvement <u>shall be entitled to a lien upon funds that are owed to the contractor</u> with whom the first tier subcontractor dealt and <u>that arise out of the improvement on which the first tier subcontractor worked or furnished materials</u>.
>
> (2) A second tier <u>subcontractor who furnished labor, materials, or rental equipment</u> at the site of the improvement <u>shall be entitled to a lien upon funds</u> that are owed to the first tier subcontractor with whom the second tier subcontractor dealt and <u>that arise out of the improvement on which the second tier subcontractor worked or furnished materials</u>. A second tier subcontractor, to the extent of the second tier subcontractor's lien provided in this subdivision, shall also be entitled to be subrogated to the lien of the first tier subcontractor with whom the second tier contractor dealt provided for in subdivision (1) of this section and shall be entitled to perfect it by notice of claim of lien upon funds to the extent of the claim.
>
> * * *
>
> (5) <u>The liens upon funds granted under this section shall secure amounts earned by the lien claimant as a result of having furnished labor, materials, or rental equipment</u> at the site of the improvement under the contract to improve real property, including interest at the legal rate provided in G.S. 24-5, whether or not such amounts are due and whether or not performance or delivery is complete. In the event insufficient funds are retained to satisfy all lien claimants, subcontractor lien claimants may recover the interest due under this subdivision on a pro rata basis, but in no event shall interest due under this

12

> subdivision increase the liability of the obligor under G.S. 44A-20.
>
> (6) A lien upon funds granted under this section is perfected upon the giving of notice of claim of lien upon funds in writing to the obligor as provided in G.S. 44A-19 and shall be effective upon the obligor's receipt of the notice. The subrogation rights of a first, second, or third tier subcontractor to the claim of lien on real property of the contractor created by Part 1 of Article 2 of this Chapter are perfected as provided in G.S. 44A-23.

N.C. Gen. Stat. § 44A-18 (emphasis added).[2]

Section 44A-18's text makes plain that it secures an interest that already exists. It states that a lien on funds created "under this section shall secure amounts earned by the lien claimant as a result of having furnished labor, materials, or rental equipment at the site of the improvement under the contract to improve real property . . . ." N.C. Gen. Stat. § 44A-18(5).

Further, a subcontractor's entitlement to a lien on funds arises upon delivery of the materials and equipment: "For this entitlement, he need only show that the materials were delivered to the site of the improvement." Contract Steel Sales, Inc. v. Freedom Const. Co., 362 S.E.2d 547, 551 (N.C. 1987). See also N.C. Gen. Stat. § 44A-18(1) ("A . . . subcontractor who furnished labor, materials, or rental equipment at the site of

---

[2] Because the Subcontractors in this case are all first or second tier subcontractors, we need not look further down the chain.

13

the improvement shall be entitled to a lien upon funds that are owed to the contractor . . . ."). And North Carolina's Section 44A-18 is, apparently, no anomaly with such timing:

> Under most mechanics lien statutes, a supplier of labor or materials to a construction site enjoys an inchoate lien which arises at the commencement of work on the project. To preserve their lien rights, unpaid mechanics and materialmen must file a notice of lien . . . . When these perfection steps are taken, the claimant's lien rights 'vest' and *relate back* to the commencement of work. By Section 546(b), the trustee has no right to avoid what would otherwise be an unperfected lien.

Thomas G. Kelch & Michael K. Slattery, Real Property Issues In Bankruptcy 4-17-18 (West 1999).

In 2012, the North Carolina legislature amended Section 44A-18 with language intended to make clear that a subcontractor is entitled to a lien on funds as soon as construction materials are delivered: "A lien upon funds granted under this section arises, attaches, and is effective immediately upon the first furnishing of labor, materials, or rental equipment at the site of the improvement by a subcontractor." N.C. Gen. Stat. § 44A-18(f) (2013). This amendment, effective as of January 2013, does not control here. But because the North Carolina legislature deemed it a clarifying amendment, we nevertheless find it instructive. Cf. Brown v. Thompson, 374 F.3d 253, 259-60 (4th Cir. 2004) (recognizing that a legislature may amend a statute "to clarify existing law, to correct a

14

misinterpretation, or to overrule wrongly decided cases" and noting that to determine whether an amendment clarifies or changes existing law, courts "look[] to statements of intent made by the legislature that enacted the amendment" and "accord great weight" to "subsequent legislation declaring the intent of an earlier statute" (quotation marks and citations omitted)). With the amendment, the North Carolina legislature sought to "[c]larif[y] when certain subcontractor lien claims arise to prevent loss of subcontractor lien rights under bankruptcy court interpretation of [the] current statutory language." Research Div. of the N.C. Gen. Assembly, Summaries of Substantive Ratified Legislation 25 (2012). See also Legislative Research Commission's Mechanics Lien on Real Property Committee, Report to the 2012 Session of the 2011 General Assembly of North Carolina 11 (2012) ("The Committee recommends the changes . . . to address problems under the current law, including subcontractor claims of lien upon funds being impaired by decisions of federal bankruptcy courts interpreting current law . . . .").

The bankruptcy court decisions that the North Carolina legislature sought to neuter with its clarifying amendment were In re Mammoth Grading, Inc., No. 09-01286-8-ATS (Bankr. E.D.N.C. July 31, 2009); In re Harrelson Utilities, Inc., No. 09-02815-8-ATS, 2009 WL 2382570 (Bankr. E.D.N.C. July 30, 2009); and In re

15

Shearin Family Investments, LLC, No. 08-07082-8-JRL, 2009 WL 1076818 (Bankr. E.D.N.C. Apr. 17, 2009). "Prior to these decisions, it was . . . commonly accepted practice that a lien on funds was an inchoate right, arising at the time funds became owed to the obligee." North Carolina Construction Law § 3:78 (2013). But in those decisions, the bankruptcy court appears to have conflated the lien with the underlying interest it secures. See, e.g., In re Shearin Family Invs., 2009 WL 1076818, at *2. The bankruptcy court somehow read the future tense into the word "shall." Id. ("[T]he statute creating the lien, N.C.G.S. § 44A-18(1), is written in the future tense: 'A first lien subcontractor . . . shall be entitled to a lien upon funds which are owed to the contractor. . . .'"). And then the bankruptcy court held that the notice of claim of lien not only perfects but actually creates the interest. Id. With its clarifying amendment, the North Carolina legislature expressly sought to correct what it clearly viewed to be misinterpretations of state law.

C.

Now turning to the case before us, the parties agree that the only live issue on appeal is whether the Subcontractors had an interest in property when CSS filed for bankruptcy. The bankruptcy court and district court both held that they did, and we agree.

16

As we have already explained, an interest in property is broad and covers more than simply liens, which serve to secure a pre-existing interest. See, e.g., In re Maryland Glass Corp., 723 F.2d at 1141-42. There is no dispute that the Subcontractors delivered materials and equipment to CSS for its building work before CSS filed for bankruptcy. Under North Carolina law, the Subcontractors became entitled to a lien securing the funds earned "as a result of having furnished labor, materials, or rental equipment . . . ." N.C. Gen. Stat. § 44A-18(5). And the Subcontractors' entitlement to a lien arose upon delivery of the materials and equipment. See, e.g., Contract Steel Sales, 362 S.E.2d at 551 ("For this entitlement, he need only show that the materials were delivered to the site of the improvement."). We therefore conclude that the Subcontractors had an interest in property when CSS filed its bankruptcy petition.

BB&T counters that any rights or interests the Subcontractors had at the time CSS filed its petition were "inchoate" and meaningless until noticed and thereby perfected. No doubt, an entitlement to a lien under Section 44A-18 may be lost if not noticed and perfected as prescribed. BB&T focuses on the fact that without a perfected lien, the subject funds could be "extinguished" or "diluted." Appellant's Br. at 52.

17

But just because an entitlement, right, or "interest" may be lost does not mean that it therefore fails to exist.

BB&T also places heavy emphasis on the phrase "[u]pon compliance with this Article" set out at the top of Section 44A-18 before the statute's enumerated subsections. According to BB&T, that phrase must mean that no interest exists unless the statutory notice and perfection requirements have been met. We freely admit that the purpose of the phrase "[u]pon compliance with this Article" is less than clear. But if the law requires no more than delivery for entitlement to a lien to arise—and that is precisely what we have just held—then delivery is all that is required to be in "compliance with this Article" for purposes of being entitled to a lien. Further, North Carolina's legislature removed the phrase in its 2012 clarifying amendment. Clearly, it did not view that phrase as important to, much less determinative of, when interests in property arise under Section 44A-18.

In sum, we hold that the Subcontractors had an interest in property at the time CSS filed its bankruptcy petition. The parties agree that all other conditions for Section 362(b)(3)'s bankruptcy stay exception for "any act to perfect, or to maintain or continue the perfection of, an interest in property," 11 U.S.C. § 362(b)(3), are met. We, like the bankruptcy court and district court, thus hold that the Section

18

362(b)(3) exception applies and that the Subcontractors are not barred by the bankruptcy stay from noticing, i.e., perfecting, their extant interest in property post-petition.[3]

III.

For the foregoing reasons, the district court's affirmance of the bankruptcy court's order is

AFFIRMED.

---

[3] BB&T also claimed that the Subcontractors are precluded from asserting subrogated lien rights on real property under N.C. Gen. Stat. § 44A-23. BB&T noted that these rights are "contingent on the giving of notice of claim of lien upon funds" under Section 44A-18, analyzed in detail above. Appellant's Br. at 55. BB&T claimed that the Subcontractors "are not permitted by an exception to the automatic stay to assert, postpetition, Subrogated Lien Rights against the obligor's real property because they are stayed from serving the notice of claim of lien upon funds." Id. But as we have already held, the Subcontractors may indeed notice, post-petition, their claim of lien on funds. This related argument therefore necessarily fails.

19